**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| _____ | |
| ALI ADAN SAID,                    ) | |
|                                   ) | |
|             Petitioner,           ) | |
| V.                                )     Civil Action No. 1:05cv808 | |
|                                   ) | |
| ROY CHERRY, ET AL.,               ) | |
|                                   ) | |
|             Respondents.          ) | |
| _____) | |

<u>**MEMORANDUM OPINION**</u>

Petitioner, Ali Adan, a citizen of Somalia, entered the United States on December 8, 1993, under the name of Ali Ahmed Said, born on September 9, 1974.  Earlier, in August 1993, petitioner had applied for refugee status at the U.S. Embassy in Nairobi, Kenya, by falsely claiming to be the brother of Asha Ahmed, who was previously granted refugee status in the United States.  On December 20, 1993, petitioner went to Canada.  There, under the name of Abdi, Ali Adan, born on June 5, 1971, he applied for refugee status, which was granted, and eventually for landed immigrant status, which was also granted on April 4, 1995.  Whatever his true name, petitioner denies having ever applied for refugee status in the United States under his own name.

On October 1, 1995, petitioner attempted to re-enter the United States, claiming to be Mohamed Maye Mursal, born on April 15, 1966.  He presented a Somali passport and a Canadian landed

immigrant document bearing that name, as well as a Canadian health card bearing the same biographical identification. Upon being questioned, he claimed to be Abdi, Ali Adan, born June 5, 1971, but he acknowledged having fraudulently obtained refugee status in the United States under the name of Ali Ahmed Said, born September 9, 1974. He also claimed he had taken Mursal's documents without his knowledge and while Mursal was in Italy. He was served with a Notice of Hearing on that date alleging, among other things, that he attempted to enter the United States by fraud and without possession of valid entry documents. On January 5, 1996, petitioner failed to appear at the hearing on the charges, and the Immigration Judge issued an order finding petitioner excludable as charged. He was ordered excluded and deported in absentia.

Notwithstanding that petitioner had previously conceded obtaining refugee status by fraud, on June 25, 1996, he applied for adjustment of status to that of a lawful permanent resident, exactly on the basis of his previous fraudulent admission as a refugee. In such application, he claimed he never attempted to procure a visa by fraud nor had previously been excluded from the United States. The application was granted based on petitioner's fraudulent misrepresentations.

On January 6, 1997, petitioner attempted to re-enter the United States under the name Ali Adam ABDI, born on June 5, 1971. In a sworn statement, petitioner stated he had also previously re-

-2-

entered the United States at Detroit in June 1996, but could not recall the name of the person whose I.D. he used that time. Pursuant to proper notice of hearing, on May 7, 1997, exclusion proceedings were held.  Again, petitioner failed to appear at the hearing.  The Immigration Judge ordered excluded and deported under INA 212(a)(7)(A)(i)(I), 212(a)(6)(A) and 212(a)(6)(C).

Despite the deportation orders, all of which were served on petitioner at his last known address, he remained in the United States.  On September 7, 2004, Petitioner was encountered by the police while attempting to renew his taxi license.  He was apprehended by the Falls Church Police Department and transported to the Arlington County Jail because of the outstanding removal warrants pending with the INS.

In Ali v. Gonzales, No. C02-2304P, the United States District Court for the Western District of Washington entered an Order preventing the removal of aliens to Somalia on the ground that Somalia lacked a functioning government.  That Order applied to all persons in the United States with final orders of removal to Somalia, except those who had petitioned for a writ of *habeas corpus* or had appealed to their orders of removal as of January 17, 2003.  Copies of the Notice Regarding Injunction Barring Removals to Somalia, in English and in a Somali language, were served on petitioner on October 27, 2004.

Petitioner filed this petition in which he alleges he is in "continued unlawful detention" so as to avoid deportation.

Petitioner's continued detention is lawful because he is a member of a class which has secured an Order from a United States District Court precluding removal to Somalia.  While that injunctive order is pending, the period within which petitioner may be removed is tolled.  8 U.S.C. § 1231(a)(1)(B)(ii).

In Zadvydas v. Davis, 533 U.S. 678, 682 (2001), the Supreme Court held that the government could not detain removable aliens indefinitely beyond the 90-day removal period established by 8 U.S.C. § 1231(a), even where those aliens had committed serious crimes.  533 U.S. at 682.  In Clark v. Martinez, 125 S. Ct. 716 (2005), the Zadvydas holding was extended to excludable and inadmissable aliens.  The Court held that six months detention beyond the administrative finality of the removal order is presumptively reasonable.  Id. at 701.  Zadvydas' limitations rest on the risk that a person may be subjected to detention of an indefinite duration where a country could not be found to which he or she could be removed.  There are two reasons why an argument based on Zadvydas does not aid petitioner.

First, the "removal period" established by 8 U.S.C. § 1231(a)(1) has not yet begun to run.  8 U.S.C. § 1231(a)(1)(B) controls the determination of the start of the "removal period." Under 8 U.S.C. § 1231(a)(1)(B)(ii), that period does not begin to

run until the date of a court's final order where, as here, a court has ordered a stay in a proceeding to judicially review a removal order.   In the present case, petitioner's removal to Somalia is stayed because of the injunctive order of the United States District Court for the Western District of Washington in the Yusuf Ali litigation.   In that case, the district court certified a nationwide class of "persons in the United States who are subject to orders of removal...to Somalia that are either final or that one or more of Respondents believe to be final."   Yusuf Ali v. Ashcroft, 213 F.R.D. 390, 396 (W.D.Wa. 2003), affirmed, 346 F.3d 873 (9th Cir. 2003).

The Ninth Circuit's panel decision in Yusuf Ali was filed on September 17, 2003.   The Attorney General sought rehearing, and suggested rehearing en banc.   Prior to the Court of Appeals' taking any further action in the Yusuf Ali case, the Supreme Court decided Jama v. Immigration & Customs Enforcement, ---U.S.---, 125 S. Ct. 694, 160 L.Ed.2d 708 (2005).   In Jama, the Supreme Court disapproved the rationale underlying the decision in the Ali litigation, holding instead that the Attorney General may, under the applicable statute, remove an alien without the acceptance of a receiving nation.

Following the Supreme Court's decision in Jama, the Attorney General moved in the Court of Appeals for the Ninth Circuit for an Order vacating its decision in Yusuf Ali.   While the Ninth Circuit

recognized that Jama overruled Ali "*sub silentio*," Mohammed v. Gonzales, 400 F.3d 785, 801 (9th Cir. 2005), the Ninth Circuit has yet to decide whether to rehear Yusuf Ali, nor has it considered the effect of the Supreme Court's decision in Jama on its ruling. Pending those decisions, the district court's injunction remains in effect.

As a result, petitioner's removal to Somalia is stayed by the Order of a Court which reviewing propriety of orders of removal to Somalia. Under 8 U.S.C. § 1231(a)(1)(B)(ii), the period of removal applicable to the petitioner has not yet begun to run, and the limitations on that period established in Zadvydas does not yet apply.

Second, if petitioner argues he is subject to an indefinite detention of the nature addressed by Zadvydas, he must first identify how his indefinite detention through the failure to remove him is attributable to the action or inaction of the government. See Doherty v. Thornburgh, 943 F.2d 204, 210-12 (2d Cir. 1991); Dor v. District Director, 891 F.2d 997, 1002 (2d Cir. 1989). The delay is attributable to legal proceedings commenced by a third party against the government, and which later included the petitioner, in an effort to prevent his removal. There is no evidence that his protracted detention is attributable to the actions or inaction of the government. Mandarino v. Ashcroft, 318 F. Supp. 2d 13, 18 (D. Conn. 2003); See also Soberanes v. Comfort, 388 F.3d 1305, 1310-11

(10th Cir. 2004); <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002); <u>Parra v. Perryman</u>, 172 F.3d 954, 958 (7th Cir. 1999); <u>Powell v. Ashcroft</u>, 194 F. Supp. 2d 209 (E.D.N.Y. 2002). Rather, the government is taking affirmative action to vacate the 9th Circuit Order which presently prohibits petitioner's removal and prolongs his detention.

Where, as here, the continued detention without removal of an alien is the result of his membership in a class of aliens that has sought, on a class basis to prevent their removal to a particular country through litigation, the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in <u>Zadvydas</u> does not exist.  Indeed, by statute, such time is excluded from the period within which the alien can be removed.  <u>See</u> 8 U.S.C. § 1231(a)(1)(C)(1999) (stating "removal period shall be extended...if the alien...acts to prevent the alien's removal subject to an order of removal").

Accordingly, in light of the uncertainty of the continuing vitality of the <u>Yusuf Ali</u> injunction, it cannot be said that petitioner is being held indefinitely.  Rather, a firm resolution of his continued detention requires only the Ninth Circuit's decision on the motions pending before it, which presumably will give effect to the Supreme Court's interpretation of the requirements for removal of aliens as set out in <u>Jama</u>.  Once the Ninth Circuit resolves that matter - or dissolves the injunction -

the government can move forward in his effort to remove petitioner
to his native country, pursuant to the ruling in <u>Jama</u>.  Under these
circumstances, as in <u>Mandarino</u>, his continued detention is not
attributable to the acts of the Government, and any calculation of
his period of detention under <u>Zadvydas</u> is premature.

For the foregoing reasons, the petitioner should be denied.


                                        /s/
                               _____
                               CLAUDE M. HILTON
                               UNITED STATES DISTRICT JUDGE



Alexandria, Virginia
January 20    , 2006

-8-